## KLINE v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Sixth Circuit. December 4, 1925.)

No. 4373.

1. **Railroads** ⊜⟹324(2)—**Statute requiring driver of school bus to stop intended to protect children, not driver.**

Gen. Code Ohio, § 7731—2 (110 Ohio Laws, p. 46), requiring driver of vehicle transporting school children to bring vehicle to full stop before crossing railroad tracks, and not to proceed until absolutely sure way is clear, is for protection of children, and not driver.

2. **Railroads** ⊜⟹335(5)—**School bus driver cannot recover, if his failure to perform statutory duty contributed to accident.**

Gen. Code Ohio, § 7731—2 (110 Ohio Laws, p. 46), requiring driver of school bus to bring vehicle to full stop before crossing tracks and not to proceed until absolutely certain that way is clear, imposes duty on driver, and, if his failure to perform duty contributed to accident, he cannot recover.

**3. Railroads** ⊕⇒324(2)—**Statute requiring school bus driver to stop imposes highest degree of care; "absolutely certain."**

Gen. Code Ohio. § 7731—2 (110 Ohio Laws, p. 46), requiring driver of school bus to stop at railroad crossings, and not proceed until "absolutely certain" that no train is approaching, requires exercise of highest degree of care permissible under circumstances, to determine whether train is approaching and, if no approaching train is then discovered, driver is justified in crossing track; "absolutely certain," referring to state of mind of ordinarily prudent driver, and not to the fact.

[Ed. Note.—For other definitions. see Words and Phrases, First and Second Series, Certain.]

**4. Railroads** ⊕⇒350(7, 16)—**Contributory negligence of school bus driver and negligence in omitting signal held for jury.**

Whether driver of school bus, struck by train at crossing, failed to exercise highest degree of care required by statute, and whether defendant negligently failed to give signal of train's approach *held* for jury.

**5. Railroads** ⊕⇒350(33)—**Engineer's negligence after discovery of danger held for jury.**

Whether engineer failed to exercise due care to avoid collision with school bus at crossing, after danger became reasonably apparent to him, *held* for jury under the evidence.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action by Louis A. Kline against the Pennsylvania Railroad Company. Judgment for defendant, and plaintiff brings error. Reversed.

A train of the Pennsylvania Railroad collided at a public crossing in the state of Ohio with a school bus containing 17 children on their way to school. Kline, the plaintiff in error, was the driver of the bus and was injured. He brought this suit, charging, among other things, that the railroad company was guilty of negligence in the operation of its train, viz.: As to excessive speed, lack of control in approaching the crossing, failure of the engineer to keep a lookout and to signal the train's approach, and his failure to abate the speed of the train after he knew, or by the exercise of ordinary care ought to have known, of plaintiff's peril by reason of his proximity to or presence on the track. These averments of negligence were controverted and a plea of contributory negligence filed, which was also put in issue.

Plaintiff testified that, as he approached the crossing (known in the record as Lambert's Crossing), driving in a westerly direction, he "kept looking for the train," and when he reached the telephone pole 35 feet east of the track he stopped and looked to the right and left; at that time he could see Halleck's Crossing, which was about 716 feet south of him; he listened, and "everything was quiet," and he then started to cross the track, but when his horses' heads were crossing the second rail he saw the train, which was 300 or 400 feet away; that he "took the whip and give the horses a cut over the back," and then the crash came. He further testified that he could see as far south from the place where he stopped as anywhere between that point and the track, and nowhere within that distance could he see beyond Halleck's Crossing. Other witnesses testified that they heard no signal of the train's approach to the crossing, though the preponderance of the evidence was to the effect that proper signals were given.

The engineer said that he gave the customary signals for both crossings; that his train was running 50 or 55 miles an hour; when 1,200 or 1,300 feet from the crossing he first saw the team plaintiff was driving, which was about half way between the two rails of the track; there was then time for the horses "moving at an ordinary walk" to cross the track before he reached that point. "After I first saw those horses, I kept on proceeding until they didn't—I thought I had better toot them out of the way, hurry them up a little, and I started to pull the whistle. They stopped. He started to pulling the horses back, and then he gave them a cut or something, and they started ahead. When I started to toot the whistle was when he pulled the horses back. Then I shut my engine off, throwed the air on, and turned the sander on. As near as I can say, I was along about 500 or 600 feet from them when I applied the air." And "after I saw the team on the track, I kept watching out to see what was going on. I couldn't just tell you how soon after I saw the team on the track I blew the whistle again; only a few seconds until I started to toot the emergency whistle. I did that to hurry him up."

Both sides introduced evidence of the result of tests made as to when and where the train could have been seen by plaintiff, and as to the time in which the bus could have cleared the crossing, starting from the place where plaintiff claimed to have stopped. At the conclusion of all the evidence, the jury, by direction of the court, returned a verdict for defendant, upon which judgment was entered.

Louis H. Winch, of Cleveland, Ohio (Payer, Winch, Minshall & Karch, of Cleveland, Ohio, on the brief), for plaintiff in error.

Clan Crawford, of Cleveland, Ohio (Squire, Sanders & Dempsey, of Cleveland, Ohio, on the brief), for defendant in error.

Before DONAHUE, MOORMAN, and KNAPPEN, Circuit Judges.

PER CURIAM. [1,2] A statute of the state required plaintiff, as driver of a vehicle engaged in the transportation of school children, to bring it to a "full stop before crossing the tracks of any railroad or interurban electric line and not to proceed across such tracks until absolutely certain that no car or train is approaching from either direction." Gen. Code Ohio, § 7731—2 (110 Ohio Laws, p. 46). This statute was obviously enacted in the interest of children traveling in school busses, and not for the protection of the driver. But it imposed a duty on the plaintiff, and if, in failing to perform it, he so contributed to the accident that, but for his failure, it would not have occurred, he cannot recover.

[3,4] It is contended for the railroad that, measured by the demands of the statute, it was his duty to know that a train was not approaching before attempting to cross the track, and the fact that he was struck on the crossing was of itself such evidence of breach of duty as to amount in law to negligence. We do not so construe the statute. The phrase "absolutely certain," in our opinion, refers to the state of mind of the ordinarily prudent driver, and not to the fact, for one may be certain (the qualifying word "absolutely" adds no strength to the term) that a train is not approaching when in fact one is. What the statute requires is the stopping of the vehicle, and the exercise of the highest degree of care permissible under the circumstances to determine whether a train is approaching, which, when done, with the result that no approaching train is discovered, justifies an attempt to cross the track. It cannot, we think, be said as a matter of law that plaintiff failed to exercise the highest degree of care permissible under the circumstances, and hence that question, as also that of the alleged negligence of the defendant in failing to signal the approach of the train to the crossing, was, under the evidence, for the jury. Frese v. C., B. & Q. Ry., 263 U. S. 1, 44 S. Ct. 1, 68 L. Ed. 131, though analogous, is not controlling, since it was held there that the plaintiff, who failed to perform his duty under the statute, could not recover on the ground that the injury might have been prevented, if his subordinate had not also failed to perform his duty.

[5] There was also evidence requiring the submission of the case to the jury on the theory that the engineer failed to exercise due care to avoid the collision after imminent danger of it became known or reasonably apparent to him. He saw the team when 1,200 or 1,300 feet from the crossing, and nothing was done by him further to warn plaintiff of the approach of the train or to abate its speed until it had traveled about half the intervening distance. His claim that plaintiff pulled the horses when the whistle was blown, as if to stop them, thus causing a delay, and bringing about the collision, is denied by plaintiff. We think it was for the jury to determine whether he was guilty of negligence proximately causing the injury, after the peril of plaintiff became known or was reasonably apparent to him.

The judgment is reversed.