## ATLANTIC CITY R. CO. v. SMITH.

## SAME v. YOUNG.

(Circuit Court of Appeals, Third Circuit.
May 21, 1926.   Rehearing Denied
June 22, 1926.)

### Nos. 3353, 3354.

1. Negligence ⬤═136(9)—Direction of verdict on question of negligence is authorized, where reasonable men cannot differ.

To authorize direction of a verdict on the ground of negligence, either original or contributory, the court must reach a double conclusion. It must in effect say, first, that the conduct of plaintiff or defendant has not been that of the average reasonable man under the same or similar circumstances; then it must take a further step and declare that reasonable men, in the exercise of an honest and impartial judgment could come to no other conclusion than that plaintiff or defendant has failed to use such due care.

2. Railroads ⬤═327(8)—Place and time of making observation before going on crossing must be such that observation will be effective.

While ordinary care is all that is required in selection of time and place for making observations before going on a railroad crossing, the place selected must be such that the observation will be reasonably effective.

3. Railroads ⬤═350(16)—Contributory negligence of occupants of truck injured at crossing held for jury.

Where persons riding in a truck, struck and injured on a highway crossing, stopped when 20 feet from the track and listened and looked in both directions, but neither heard nor saw a train, though they could see the track in the direction from which the train came for a distance of 780 feet, the question of their contributory negligence *held* one for the jury.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Actions at law by Joseph E. Smith and by Richard H. Young against the Atlantic City Railroad Company. Judgments for plaintiffs, and defendant brings error. Affirmed.

Wm. Clarke Mason, of Philadelphia, Pa., for plaintiff in error.

Michael D. Hayes and Wilson & McAdams, all of Philadelphia, Pa., for defendants in error.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and CLARK, District Judge.

CLARK, District Judge. The sole question presented by this appeal is the propriety of the learned District Judge's refusal to give binding and/or peremptory (see Empire State Cattle Co. v. A., T. & S. F. R. R. Co., 210 U. S. 1, 28 S. Ct. 607, 52 L. Ed.

931, 15 Ann. Cas. 70) instructions in favor of the defendant railroad company. This request for the direction of a verdict was urged upon the familiar ground of contributory negligence upon the part of the plaintiffs, the driver of a truck and his companion.

The accident, whose happening and ensuing litigation presents this problem, originally to the trial judge and now to us, was of the type so gruesomely, and apparently so uselessly, portrayed by poster (Think, Driver, Think!) on the walls of all our railroad stations. A one-ton automobile express truck was going from Wildwood to Petersburg, in New Jersey, between 7 and 8 o'clock on the morning of July 9, 1922. Near the latter place the single-track line of defendant railroad company crosses the highway at grade in what is sometimes known as an X or "scissors" crossing, the angles being less than 90 per cent. While attempting to make this crossing, the plaintiff's truck was struck by a steam train of the defendant, and he and his companion, the second plaintiff, were thrown out and injured.

The principle controlling the trial court in the direction of a verdict is well settled, and has been thus very recently stated by Mr. Justice Van Devanter in the United States Supreme Court in Small Co. v. Lamborn Co., 267 U. S. 248, at page 254, 45 S. Ct. 300, 303 (69 L. Ed. 597):

"The rule for testing the direction of a verdict, as often has been held, is that where the evidence is undisputed, or of such conclusive character that if a verdict were returned for one party, whether plaintiff or defendant, it would have to be set aside in the exercise of a sound judicial discretion, a verdict may and should be directed for the other party. The view that a scintilla or modicum of conflicting evidence, irrespective of the character and measure of that to which it is opposed, necessarily requires a submission to the jury, has met with express disapproval in this jurisdiction, as in many others. Improvement Company v. Munson, 14 Wall. 442, 448 [20 L. Ed. 867]; Pleasants v. Fant, 22 Wall. 116, 122 [22 L. Ed. 780]; Bowditch v. Boston, 101 U. S. 16, 18 [25 L. Ed. 980]; Anderson County Commissioners v. Beal, 113 U. S. 227, 241 [5 S. Ct. 433, 28 L. Ed. 966]; Delaware, etc., R. R. Co. v. Converse, 139 U. S. 469, 472 [11 S. Ct. 569, 35 L. Ed. 213]."

[1] Courts, however, have not, we think, always quite clearly realized that, in order to direct a verdict in a negligence (either original or contributory) case, a double conclusion must be reached. The court must in ef-

fect say, first, that the conduct of plaintiff or defendant has not been that of the average reasonable man under the same or similar circumstances. Then it must take a further step, and declare that reasonable men, in the exercise of an honest and impartial judgment, could only conclude that the plaintiff or defendant has been guilty of such a failure to use due care. Crookston Lumber Co. v. Boutin, 149 F. 680, 685, 79 C. C. A. 368; Teis v. Smuggler Mining Co., 158 F. 260, 85 C. C. A. 478, 15 L. R. A. (N. S.) 893. The tendency to ignore this twofold requirement has in our opinion resulted in some instances in the substitution of a court's judgment for that of the jury, and the negation to that extent therefore of the system "found worthy of constitutional safeguard."

We need on this appeal consider only the testimony of the plaintiffs and the topography. Ryan v. D., L. & W. R. R. (C. C. A.) 8 F.(2d) 138. This situation is then presented: The truck was stopped at a distance of 20 feet from the crossing. Both plaintiffs looked in both directions, and listened, but saw and heard no approaching train. Their vision along the track in the direction from which the colliding train came was unobstructed for 780 feet (the curve was 6 poles, 130 feet apart, distant). The truck was put in second gear and proceeded toward the track at a speed of 3 or 4 miles per hour. The plaintiffs did not look again.

[2] At what precise point, then, must a person who is approaching a railroad crossing, and who is still able to stop, take his *last* look and still permit a jury to pass upon the question of whether his failure to look *again* was reasonable under all the circumstances? This, in our view, is the question presented by the facts in the case at bar. While it is settled that ordinary care is all that is required in the selection of the time and place for making observations before going upon a railroad crossing, nevertheless the place selected must be such that the observation will be reasonably effective. Fitzhugh v. Boston & Maine R. R. Co., 195 Mass. 202, 80 N. E. 792; McCanna v. New England R. R. Co., 20 R. I. 439, 39 A. 891; Stokes v. Southern R. R. Co., 104 Va. 817, 52 S. E. 855. So, of course, a failure in this regard may as a matter of law constitute contributory negligence. Railroad Co. v. Houston, 95 U. S. 697, 24 L. Ed. 542; Schofield v. C., M. & St. P. R. R. Co., 114 U. S. 615, 5 S. Ct. 1125, 29 L. Ed. 224; and also our own opinion in Hall v. Philadelphia & Reading R. R. Co., 244 F. 104, 156 C. C. A. 532.

[3] In the calculation necessary to determine at what point the application of control to either one of two approaching objects is necessary in order to avoid a collision, there are at least three factors. These are their speed, the distance between the points at which they become mutually visible, and the distance in which they may be brought to a stand still. A mistaken estimate of any one of these factors, and a consequent disturbance of the ratio between them, will, in all reasonable probability, result in a collision. This thought has been expressed by the Supreme Court of Ohio in N. Y., C. & St. L. R. R. Co. v. Kistler, 66 Ohio St. 326, 64 N. E. 130, as follows:

"The looking should usually be * * * so near thereto as to enable the person to get across in safety at the speed he is going before a train within the range of his view of the track, going at the usual speed of fast trains, would reach the crossing. There should be such looking before going upon the track, even though there was a looking farther away, when no train was seen approaching."

Obviously, however, not every such miscalculation betokens conduct of such a nature that only *one* conclusion can be reached by reasonable men therefrom, namely, that it fell below, not any standard of perfection, but that external one of reasonable care under all the circumstances. The language used by the Circuit Court of Appeals for the Ninth Circuit, afterwards approved by the United States Supreme Court in 173 U. S. 701, 19 S. Ct. 878, 43 L. Ed. 1185, commends itself to our judgment.

"The question presented in this case is, whether the plaintiff looked and listened within a reasonable distance from the crossing. What, then, is such reasonable distance? Manifestly, this is to be inferred as a fact from the circumstances of the case. It is not a matter of legal judgment, but one of general observation and practical experience. It may be said, without doubt, that it would have been more prudent in the plaintiff to have looked when he was much further from the crossing than he was at the time he did look, but it is not a question of greatest or relative care. It is a question of reasonable care. The facts give to the argument in favor of the contention that plaintiff was negligent much force, but it is argument after all. The question is a debatable one. The opinions of men will not at once agree concerning it." Lynch v. No. Pacific R. R., 69 F. 86, 16 C. C. A. 151.

In other words, the question in each case is: Would reasonable men agree that the average reasonable man would not, when con-

fronted with the factors of distance, speed, and visibility appertaining to that case, have misjudged their relation? In the case at bar it is our opinion that the miscalculation, either in the range of vision or in the speed at which any approaching train, as a matter of reasonable probability, would cover such range, was not so out of line with the facts that the only conclusion open to reasonable men is one of negligence on the part of the person making it.

In a very recent case, Kline v. Pennsylvania R. R., 9 F.(2d) 290, the Circuit Court of Appeals for the Sixth Circuit held that whether the driver of a school bus, struck by a train at a crossing, failed to exercise the highest degree of care required by statute, was for the jury, and direction of a verdict upon the following facts by the trial judge was error. The facts are taken from the opinion of the court at page 291:

"Plaintiff testified that, as he approached the crossing (known in the record as Lambert's Crossing), driving in a westerly direction, he 'kept looking for the train,' and when he reached the telephone pole 35 feet east of the track he stopped and looked to the right and left; at that time he could see Hallock's Crossing, which was about 716 feet south of him; he listened, and 'everything was quiet,' and he then started to cross the track."

So, a fortiori, in the instant case, where the degree of care is only reasonable and not the highest. In summation, we refuse to substitute our view of the facts for that of a jury, unless upon a showing of an estimation of the situation so out of line with its reality that no other course is open to us. In the disposition we are making of this case, it is not necessary for us to consider the effect of the Grade Crossing Act of New Jersey (P. L. 1909, c. 96).

The judgment is affirmed.