NEWTON W. ELLIS, APPELLEE, V. UNION PACIFIC RAILROAD COMPANY, APPELLANT.

22 N. W. 2d 305

FILED MARCH 22, 1946: No. 31889.

*T. F. Hamer, R. B. Hamer, and G. C. Holdrege,* for appellant.

*Rosewater, Mecham, Shackleford & Stoehr,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CHAPPELL, J.

Plaintiff, an engine foreman in charge of a switching crew, sought recovery for personal injuries received by him in a narrow clearance between a box car in defendant's service and the building of another because of alleged negligence of defendant. The action was predicated upon the Federal Employers' Liability Act. Upon submission to a jury plaintiff was awarded a verdict and judgment for $10,000. Motion for new trial was overruled and defendant appealed. The former opinion of this court, Ellis v. Union P. R. R. Co., 146 Neb. 397, 19 N. W. 2d 641, held substantially that plaintiff having failed to prove any negligence charged the court erred in submitting the case to the jury and the cause was reversed and dismissed.

In motion for rehearing it was argued by plaintiff that this court had overlooked fundamental changes in federal

construction of the Federal Employers' Liability Act requiring submission of similar cases to a jury for decison. We granted reargument on motion for rehearing but find from a study of cited cases that fundamental common law rules governing questions of alleged negligence of the defendant have not been changed. Therefore, this opinion will amplify the discussion of legal principles and apply them in a somewhat different manner but adhere to the result of our former opinion.

The act and its construction by federal courts is of primary importance. We are mindful that the rights which it creates are federal rights governed by federal rather than local rules of law and that the sufficiency of the evidence to establish negligence of defendant under the act is a federal question. Bailey v. Central Vermont Ry., 319 U. S. 350, 87 L. Ed. 1444, 63 S. Ct. 1062; Bimberg v. Northern P. Ry. Co., 217 Minn. 187, 14 N. W. 2d 410.

Section 51, Title 45, Railroads, U. S. C. A., provides: "Every common carrier by railroad while engaging in commerce * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, *due to its negligence,* in its cars, * * * track, roadbed, * * * or other equipment." (Italics supplied.)

Section 53 of the same title provides in part: "In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, * * * the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: * * * ."

Section 54 of the same title, as amended in 1939, also provides: "That in any action brought against any common carrier under or by virtue of any of the provisions of this

chapter to recover damages for injuries to, * * * any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where such injury * * * resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier; * * * ."

Similar cases were complicated by judicial construction before the 1939 amendment but thereafter they are comparatively simple. In other words, it has now been held that assumption of risk as a defense has been taken out of the act if defendant is negligent; that is, now the employee does not assume the risk of those dangers in his employment which are caused by or result from defendant's negligence. However, it is as important to remember that the employee still assumes the risk of those ordinary dangers in his employment which are naturally inherent in the business and not caused by or the result of defendant's negligence.

The act also authorizes the application of comparative negligence instead of barring the employee from recovery because of contributory negligence which is now useful or available only to mitigate damages. In that connection the rule is that if plaintiff's evidence discloses that the employer is guilty of any negligence, in whole or in part, proximately causing or contributing to the injury the case must be submitted to the jury for decision regardless of plaintiff's negligence.

Recently it has been reaffirmed that the employer's liability must be determined under the general common law rule defining negligence as lack of due care under the circumstances or the failure to do what a reasonable and prudent man would have done or doing what such a person would not have done under the existing circumstances. As stated in Tiller v. Atlantic C. L. R. R. Co., 318 U. S. 54, 87 L. Ed. 610, 63 S. Ct. 444: "A fair generalization of the rule is given in the Senate Committee report on the 1939 amendment: 'In justice, the master ought to be held liable for injuries attributable to conditions under his control when they are not such as a reasonable man ought to maintain

in the circumstances.' "

It is generally held that in order to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of a negligent act and that it ought to have been foreseen in the light of the attending circumstances. "Bare possibility is not sufficient. * * * Events too remote to require reasonable prevision need not be anticipated. * * * The carrier's negligence must be a link in an unbroken chain of reasonably foreseeable events." Brady v. Southern Ry. Co., 320 U. S. 476, 88 L. Ed. 239, 64 S. Ct. 232.

Thus the premise in cases similar to the one at bar is that in order to recover under the act it is incumbent upon plaintiff to prove by a preponderance of the evidence that the employer was negligent in some manner, as alleged in his petition, and that such negligence was the proximate cause, in whole or in part, of the injuries sustained. In doing so he is required to present probative facts from which both the negligence and the causal relation can be reasonably inferred. An essential requirement is that mere speculation must not be allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked. Tennant v. Peoria & P. U. Ry. Co., 321 U. S. 29, 88 L. Ed. 520, 64 S. Ct. 397.

In other words the weight of the evidence under the act must be more than a scintilla, both upon the question of defendant's negligence and proximate cause, before the case may be properly left to decision of the jury. The applicable rule is that when the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by nonsuit, directed verdict, or otherwise, in accord with the applicable practice without submission to the jury, thereby saving the result from mischance of speculation over legally unfounded claims. Brady v. Southern Ry. Co., *supra*.

The present case must be measured upon the foregoing

basis. We will not again review the pleadings or evidence at length except as it may be necessary for purposes of clarity. Although plaintiff specifically alleged in his petition many charges of negligence by defendant the trial court did not submit all of them to the jury. The first instruction summarized plaintiff's allegations of negligence in substance as follows: (1) That defendant negligently moved the car which came in contact with him because the car was too large to safely move on the track, which track defendant negligently failed to maintain in a reasonably safe condition by permitting it to become uneven, with low joints, which caused the car while in motion to list in the direction of the building, thereby greatly reducing the clearance between the car and the building; (2) negligently failed to provide and maintain a reasonably safe place for plaintiff to work between defendant's track and the adjacent building; and (3) negligently failed to warn plaintiff of the danger to which he was subjected while in the position he was necessarily occupying while performing his duties.

Further by instruction No. 12 the trial court told the jury in substance that if they found from a preponderance of the evidence that defendant's engineer knew, or in the exercise of ordinary care should have known and discovered, that plaintiff was in a position of peril and in the exercise of ordinary care could and should have avoided injuring plaintiff but negligently failed to do so, then it would be the jury's duty to find for the plaintiff.

We believe it is conceded by plaintiff that there was no evidence to sustain the first allegation of negligence submitted to the jury. In any event we have reexamined the record and find that issue without any support in the evidence. We believe that it does not require further discussion. Plaintiff's motion for rehearing and argument thereon is confined to the contentions that there was competent evidence for submission to a jury upon three summarized allegations, to wit: (1) That defendant negligently failed to provide and maintain a reasonably safe place for plaintiff to work; (2) negligently failed to warn plaintiff of the

danger to which he was of necessity subjected; and (3) that the defendant's engineer was negligent in proceeding with the movement when he knew, or in the exercise of ordinary care ought to have known, that plaintiff was in a position of peril.

In our former opinion we disposed of the two latter contentions as if plaintiff were relying upon the theory of the last clear chance, and that instruction No. 12 submitted that theory to the jury. Plaintiff argues that the doctrine of the last clear chance was not an issue in the case, and that instruction No. 12 simply submitted the question of the alleged negligence of the engineer and pointed out facts and circumstances upon which a finding of negligence by him might be predicated. In that connection, however, the result must be the same whatever the nomenclature of the theory. It matters not whether we call it simple negligence of the engineer, as argued by plaintiff; discovered peril, discussed in Missouri P. R. R. Co. v. Skipper, 174 Ark. 1083, 298 S. W. 849; the humanitarian doctrine applied in Mooney v. Terminal R. R. Assn., 352 Mo. 245, 176 S. W. 2d 605, and Moran v. Atchison, T. & S. F. Ry. Co., 330 Mo. 278, 48 S. W. 2d 881, or the theory of the last clear chance discussed in St. Louis S. W. Ry. v. Simpson, 286 U. S. 346, 76 L. Ed. 1152, 52 S. Ct. 520, and Brennan v. Baltimore & O. R. Co., 115 F. 2d 555. That conclusion we believe to be inevitable because we find no evidence whatever in plaintiff's case from which it could be reasonably found that the engineer was negligent in any manner at any time, either before or after his discovery of plaintiff's peril. Therefore, the issue should not have been submitted to the jury upon any theory.

The facts in that regard are that plaintiff, as switch engine foreman, was officially the superior in charge of the entire switching crew, composed of an engineer, fireman, headman, fieldman, and himself. Of necessity he was not without training and experience. The engineer was subject to plaintiff's commands as he backed south over the Casein spur at the Myrtle Street crossing. At that time plaintiff stood in the street on the engineer's side near the corner of

the Casein building at or near a sign, approximately eight feet, nine inches high, bearing large type: "IMPAIRED CLEARANCE." The engineer continued the movement backward toward the south and at no time exceeded a speed of from one to two miles per hour. No such accident had ever happened in his previous experience. He never previously had observed employees working between the track and the adjacent building at the point of accident. He was not aware that plaintiff would place himself in danger and the peculiar happening was not reasonably foreseeable by him. Plaintiff, although not required to do so, walked slowly toward the south. Just before the accident the engineer was more than half the length of the standard box-car, 50 feet, 6 inches long, the length of the tender, approximately 35 feet, plus the distance from the tender to his position in the cab, away from plaintiff. The building, around which the car was to pass for spotting at its first platform, approximately 50 feet from the jutted corner thereof, was built in diagonals. At the inside apex of the curve of the track the building jutted slightly to the west although the wall of the building extending south from that point was generally the same distance from the track, to wit: 57 inches. At that jutted point, however, it was nearest the center of a car traveling south around the curve. At all other points north and south along the wall of the building except the one where plaintiff happened to be at the time of the accident there was sufficient clearance to avoid injuring plaintiff.

In other words, to be caught as he was, between a car and the building, it was necessary for plaintiff, the center of the car, and a space of approximately one foot at the jutted corner of the wall of the building all to be in exact apposition at the same instant of time and space. If any one of the three had missed apposition at the same instant plaintiff would not have been injured. The engineer, almost at the instant of the accident, saw that something was wrong and stopped immediately, so quickly that the center of the car which caught plaintiff between the car and the corner

of the building had to be pulled forward through approximately that foot of space to release plaintiff.

Plaintiff himself testified that he made no attempt at any time to see where the car was coming or to observe the distance between the inside of the car and the side of the building. He admits that he was familiar with the fact that the car would overhang most in the center of the inside of the curve which was directly in front of him and that the narrow distance between the building and the car at the point of injury was open and apparent to him at all times. Yet plaintiff admits that he took no precautions for his own safety and made no observations or effort at any time to try to save himself from injury.

From the foregoing facts we must conclude that there was no evidence that defendant engineer was negligent in failing to warn plaintiff of the danger or stop the car before the accident. With regard to the alleged negligence of the engineer we might well paraphrase and apply the language used by Justice Cardozo in St. Louis S. W. Ry. v. Simpson, *supra*: "The facts so summarized are insufficient to relieve the engineer (the engine foreman) from the sole responsibility for the casualty that resulted in his death (his injury). What was said by this court in Davis v. Kennedy, 266 U. S. 147, might have been written of this case. * * * 'It seems to us a perversion of the statute to allow his representative (plaintiff) to recover for an injury due to his failure to act on the ground that possibly it might have been prevented if those in secondary relation to the movement had done more.' "

Also particularly applicable is the statement made in Brennan v. Baltimore & O. R. Co., *supra*. Therein it was said: "No matter what label is. put upon the defendant's duty after the derailment it was in fact only to stop the movement as soon as it could under the circumstances created by the plaintiff's fault. * * * The defendant was confronted with an occurrence wholly unexpected which took only a few seconds to end in disaster. The fault with which it is charged depends for its proof, as to which the plaintiff

has the burden, upon nice calculations of speed, and quick action by brakes * * * . Such an uncertain basis for calculation to produce a test for the defendant's conduct does not rise above the level of mere speculation and fails to provide the substantial evidence of negligence required to prove the plaintiff's cause of action."

We come finally to the question whether defendant negligently failed to provide and maintain a safe place for plaintiff to work. It is conceded that the law so requires, and we will confine our discussion to the question whether, under the circumstances, plaintiff was so provided. The answer depends upon the facts and applicable law.

In that connection the master's duty to furnish a safe place to work is only to use reasonable care, and what is reasonable care depends upon the particular circumstances and the danger attending a place where the employee of necessity is required or accustomed to work in the performance of his duties. We inquire of necessity whether reasonable minds could in exercising impartial judgment, as distinguished from personal desire, differ in arriving at a conclusion upon the question of the alleged negligence of defendant in the construction, maintenance, and operation of its railroad. In doing so, the conclusion must be made by ordinary men, based upon the facts as they exist and the law as written, and not what it ought to be regardless of what ordinary men see or know and regardless of laws which were written for application to the ordinary, practical affairs of men.

What are the facts? There is no evidence that defendant owned, constructed, or had any control over the Casein Company building or the property upon which it was located. There is no evidence that it was constructed or maintained with defendant's consent. It was constructed or reconstructed following a fire after defendant's tracks were laid in their present form and manner. As heretofore observed, there was but one short space along its wall where clearance was insufficient and that only at the center of the car traversing it in passing around the curve. At all other

points there was sufficient clearance. As heretofore indicated, there was no defect in the tracks themselves proximately causing the injury. It was not necessary for plaintiff at any time to see or contact fieldman Brown who then stood on the Casein platform to the south. The evidence of plaintiff's witnesses is conclusive that all plaintiff needed or was required to do was cause the engineer to move backward until he, the engineer, could see and take signals from Brown. It was not necessary for plaintiff either to give or to receive any signals from Brown who did not enter the picture until the car came around the curve far enough for him to contact the engineer and by appropriate signals spot the car at the platform. Plaintiff not only could have stood on the west side of the tracks to give the signals required of him but he could have stood on the east side at any point on Myrtle Street up to the Casein building and there controlled the actions of the engineer until the engineer could see Brown and contact signals from him. The plaintiff in performing his duties was not necessarily occupying the place or position where he was at the time of the injury. It was neither customary nor required that plaintiff or any other employee of defendant be there in the performance of duty. It was not a place to work, as hereinafter defined.

Under such circumstances the failure of defendant to have engineers professionally redesign its system of tracks and move them farther west after construction of the Casein building, over which it had no control, was not negligence. Its alleged negligence was not a link in an unbroken chain of reasonably foreseeable events. The accident was simply a "Believe it or Not." As stated in Brady v. Southern Ry. Co., *supra*: "Bare possibility is not sufficient." Therefore, we conclude that plaintiff's evidence fails to establish any negligence of defendant, either in whole or in part, proximately causing the accident. It was proximately caused solely by reason of plaintiff's own negligence without any negligence of defendant proximately contributing thereto which bars plaintiff's recovery. We

find no precedent holding otherwise. As stated in Morris v. Pryor, 272 Mo. 350, 198 S. W. 817, a case almost identical with the one at bar, wherein plaintiff was foreman of the crew engaged in a switching movement, the court said: "As much as we pity the respondent, whose heedlessness in a work requiring constant watchfulness has brought upon him this injury, we cannot see that the appellant, by negligence, has contributed to it in any degree."

It is stated in 1 Bailey, Personal Injuries (2 ed.), § 79, p. 219: "The master's duty in respect to furnishing his servants a safe place in which to work, extends to such parts of the premises only as he has prepared for their occupancy while doing his work, and to such other parts as he knows or ought to know they are accustomed to use while doing it. If the servant voluntarily and without necessity departs from the safe place to one more dangerous, and is injured, the master is not liable."

The general rule is that "A railroad company is bound to exercise reasonable care and diligence to prevent obstructions on, over, or near its tracks, which are a source of danger to its servants and will be held liable for injuries occasioned by its neglect of duty. But the company will not be liable for injuries sustained by an employee where it was neither necessary nor customary for him to be in a position where he would be in danger of coming in contact with such an obstruction, nor will it be liable where the obstruction causing the injury was maintained by a third person without the consent of the company, and was not under its control." 39 C. J., Master and Servant, § 515, p. 397.

In Haring v. Great Northern Ry. Co., 137 Wis. 367, 119 N. W. 325, plaintiff, a switchman, was caught between a car and a freight platform extending along a curve adjacent to the tracks but which was not designed to provide a place to work. In denying recovery, and distinguishing cases relied upon by plaintiff, the court said: "These cases do not rule this one, because in those cases the servant was expected to occupy the unsafe place in the performance of his duty, while in the instant case the servant was not

required to perform his duties where he was injured."

In Davis v. Hand, 290 F. 73, a case from this circuit wherein recovery was denied, plaintiff, a fireman, was injured by being caught because of insufficient clearance between a coal bin maintained by defendant and the side of a car upon which he was climbing. In holding that no negligence of defendant was shown, point was made in the opinion that it was not necessary for plaintiff to be where he was in the performance of duty.

Plaintiff relies upon the case of Sweet v. Michigan Cent. R. R. Co., 87 Mich. 559, 49 N. W. 882, as being nearest in point with the case at bar. However, it is clearly distinguishable. In that case the building was on the premises of the defendant and under its exclusive control. Plaintiff therein was required to climb up a ladder on the side of a car as it was kicked in over a siding, and upon reaching the roof turn on the brakes to stop and spot the car at the place desired. The particular car was more difficult to mount than an ordinary car by reason of the ladder provided by defendant. The car was traveling as fast as a man could walk. An instant after warning was attempted but failed, plaintiff was caught while on the side of the car by a narrow clearance between the car and defendant's building. The court in its opinion, among other things, laid emphasis upon the fact that the building was a structure over which defendant could rightfully exercise exclusive control and that plaintiff's duties required him to be on the car. In the opinion the court distinguished Illick v. Flint & P. M. R. R. Co., 67 Mich. 632, 35 N. W. 708, wherein it was said: "The duties of his employment did not require him to go upon the box car until he had passed the bridge. * * * Whether it was 14 or 24 feet wide was a matter of no concern to the brakeman, so long as he was not required to occupy a place of danger in the discharge of his duties while passing over it, and this he was not required to do." The latter authority reflects the situation in the case at bar.

Likewise, other cases relied upon by plaintiff are distinguishable. In Outcelt v. Chicago, B. & Q. R. R. Co., 150

Minn. 398, 185 N. W. 495, plaintiff, a brakeman, while in, performance of duty, was riding on the side of the tender. While riding in that position he was caught between the tender and a car on defendant's adjoining tracks because of narrow clearance. The court in its opinion holding that the action was properly submitted to a jury laid emphasis upon the fact that the evidence disclosed it was customary for plaintiff and like employees to ride on the tender in performance of duty and that under the circumstances the danger was a hidden one, the existence of which would not be apparent to a man of ordinary prudence.

In Koller v. Chicago, St. P., M. & O. Ry. Co., 113 Minn. 173, 129 N. W. 220, telltale signals were fastened to a wire supported at both ends by upright poles erected between two passenger tracks. It was the engineer and fireman's duty to keep a watch for block signals and observe their condition. In performance of that duty plaintiff fireman stepped to the side of the engine and tender to take note of the condition of a nearby semaphore. He leaned out for that purpose and was struck by one of defendant's poles, which it had constructed and over which it had control. Under such circumstances, among other things, the court held that whether defendant negligently placed its poles a reasonably safe distance from the tracks when it could have constructed them elsewhere, was a question for the jury.

In Chicago Great Western Ry. Co. v. Peeler, 140 F. 2d 865, the question was whether defendant was negligent in allowing the end of a plank at a street crossing to protrude above the surface of the ground over which plaintiff, a switchman, tripped while in performance of his duties and fell against a moving locomotive. It was shown in that case that switchmen, in performance of their duties, were required to dismount from moving freight trains and walk along the tracks beside the moving trains at that point. The court held in such a case that defendant's alleged negligence was a question for the jury.

Decision in Ryan v. Twin City Wholesale Grocer Co., 210 Minn. 21, 297 N. W. 705, also turned primarily upon the

fact that plaintiff, a freight checker for defendant railroad, was required to work in a building at a place in proximity to improperly piled sacks of sugar which fell upon him while in performance of duty. Also in Bimberg v. Northern P. Ry. Co., *supra*, the employee was in the performance of duty on a bridge at a place where he was required to work. Likewise in Thomson v. Boles, 123 F. 2d 487, it was said: "That it was necessary and proper for plaintiff to be on the walkway in giving signals to the engineer is not seriously controverted."

The foregoing authorities all predicate the result in the case at bar and for the reasons heretofore stated, the motion for rehearing is overruled and we adhere to the conclusion that plaintiff's case should be reversed and dismissed.

REVERSED AND DISMISSED.